## THE ESTATE OF PESANTE *v.* CALDERÓN.

### APPEAL from the District Court of Mayagüez.

No. 229.—Decided March 25, 1908.

EVIDENCE—FINDINGS OF INFERIOR COURT THEREON.—The inferior courts being in a better position than the appellate court to weight the evidence taken at the trial, if the findings made thereon by such courts appear to be warranted by the facts of record, and it is not shown that there has been manifest error committed or that the judgment was contrary to the evidence, such findings must stand and be accepted by the appellate court.

The facts are stated in the opinion.

*Mr. López Landrón* for appellant.

The respondent did not appear.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

On March 6, 1907, the Estate of José Ramón Aristides Pesante, represented by his heirs Prudencio, León, Eladia and Inocencia Tomasa Pesante, filed a sworn complaint in the District Court of Mayagüez against Josefa Calderón, the widow and heir of José A. Pesante, praying for judgment requiring the defendant to execute in favor of the plaintiffs a deed of sale to the house on the Monserrate plantation and to 25 *cuerdas* of land surrounding it, in compliance with a private contract entered into on May 24, 1901, and to pay the costs.

The plaintiffs allege in support of their complaint the following facts:

"1. That Schulze & Co. brought execution proceedings in the District Court of Mayagüez against José Ramón Aristides Pesante for the recovery of a sum of money, and at the beginning of the year 1901,

the property attached was offered for sale, namely: Eighty *cuerdas* of land called "Las Cabras," situated in the *barrio* of Piñales or Añasco Arriba, in the municipal district of Añasco; 22 *cuerdas* in the same *barrio;* four tracts of 1, 14, 4 and 20 *cuerdas,* in the *barrio* of Añasco Abajo in the same municipal district; and one two-story house, an employes' house, the buildings and two mills on the Monserrate plantation in addition to 232 *cuerdas* of land in the *barrio* of Calvache and Atalaya in the municipal district of Rincón.

"2. That by reason of the sale of part of the lands attached, made by José Ramón Aristides Pesante to Belén Pesante, the latter filed a complaint intervention of ownership on May 22, 1901, against the execution creditors and debtor, claiming the ownership of the property attached, and this intervention gave rise to the suspension of the execution proceedings.

"3. That the said proceedings were being prosecuted by Schulze & Co., with the concurrence of José A. Pesante, against José Ramón Aristides Pesante, for the purpose of having the former bid in the property attached; and as the intervention was an obstacle to the realization of this plan, a compromise or arrangement became necessary between José A. Pesante and his uncle, José Ramón Aristides Pesante, in order that the execution proceedings might continue their course, José A. Pesante bidding in the property attached.

"4. That the arrangement of compromise took place on May 24, 1901, between José Ramón Aristides and José A. Pesante, under an agreement by virtue of which Belén Pesante should immediately withdraw her intervention, whereupon José A. Pesante would bind himself to pay to José Ramón Aristides $10 per week up to the date on which he, José A. Pesante, should record the property sold in his name, on which date he would deliver to José Ramón A. Pesante by public deed the two-story house on the Monserrate plantation and 25 *cuerdas* of land surrounding it, no private document of this agreement being drawn, because while José Ramón Aristides demanded it, José A. Pesante replied that his word was as good as a deed.

"5. That Belén Pesante on the same date withdrew her complaint in intervention, and José A. Pesante began to deliver $10 a week to José Ramón Aristides Pesante, which he would have continued had not a criminal hand taken his life on July 2, 1905; for which reason José A. Pesante having constituted his wife, Josefa Calderón, his heir, the latter is under the obligation of executing to the heirs of José Ramón Aristides Pesante, the plaintiffs, the deed to the 25 *cuerdas* of land and the house.

"6. That the heir of José A. Pesante has not paid the $10 a week since the death of José Ramón Aristides Pesante, and upon demand being made on her to comply with the contract in a friendly manner, she refuses to do so, alleging that the plaintiffs are not entitled thereto.

"7. That the house and land the subject of the contract have a value of $4,000."

To the complaint was attached a certificate issued by the secretary of the Mayagüez court, to the effect that said court had on May 28, 1906, declared the only and universal heirs of José Ramón Aristides Pesante to be his four acknowledged natural children, Prudencio, León, Eladia and Inocencia Tomasa Pesante.

The defendant in her sworn answer specifically denied, on account of lack of information and belief, the first, second and fifth allegations in so far as the last relates to the withdrawal of the complaint in intervention by Belén Pesante, and the seventh allegations of the complaint; and specifically also the third, fourth and fifth allegations with relation to the payment of $10 weekly by José A. Pesante to Ramón Aristides Pesante under agreement, and the sixth, in so far as it may bear any relation to the agreement or contract the existence of which is denied.

The trial having been had on October 16, 1907, the Mayagüez court, after having heard the evidence introduced in this case, rendered judgment on the following day holding that the law and the facts were against the plaintiffs, and consequently decreed and ordered that the latter should not recover anything from the defendant, who was relieved of all liability under the complaint, with the costs against the plaintiff.

On the 25th of said month of October, counsel for the plaintiffs took an appeal from the judgment rendered and the documents prescribed by law for the prosecution of said appeal have been received in this Supreme Court, including the proper statement of facts approved and signed by the judge.

In his brief to this Supreme Court counsel for the appellant maintains that the existence of the contract, which is the

fundamental fact of the complaint, has been established, and that in view of such proof the said complaint should have been sustained and invoking as legal grounds for the reversal of the judgment the improper application of the old doctrine which considered the testimony of witnesses alone insufficient for the decision of this litigation, the violations of sections 4, 9, 13, 18 and 21 of the act regulating the introduction of evidence, approved March 9, 1905, the noncompliance with sections 37 and 38 of the same act, and the violation of sections 1221 and 1245 of the revised Civil Code.

Let us consider the merits of the evidence taken at the trial, in which only six witnesses testified for the plaintiff, whose testimony we will summarize herewith thus overcoming the difficulties which the bad presentation of the statement of facts presents.

Pablo Gonce, the first of the witnesses, testified that he did not know of any contract between Ramón Aristides and José Adolfo Pesante, but he did know of verbal statements made in his store; and that the contract may have been entered into when José Adolfo bid in the property belonging to Ramón Aristides.

Rafael Mangual, the second witness, says that Attorney Campillo prosecuted execution proceedings against Ramón Aristides Pesante for the recovery of 500 *pesos,* and in this connection about 80 or 90 *cuerdas* of land, with the house and establishments belonging to the execution debtor were attached; that Belén Pesante filed a complaint in intervention under the direction of Attorney Freyre with whom the witness was associated, which complaint was admitted by the court, the execution proceedings being stayed; that as José Adolfo Pesante wished to bid in the property, he agreed with Ramón Aristides Pesante that if he should get Belén to withdraw her complaint in intervention, he would give him $10 a week, and when matters were terminated 24 or 25 *cuerdas* of the lands and the house in which Ramón Aristides was living, which agreement took place at the beginning of 1901, in Feb-

ruary or March, in the presence of the witness and in the city of Mayagüez, without any document whatsoever having been drawn, Belén not having any intervention in this agreement; that the witness wrote the motion of withdrawal and Attorney Freyre signed it; that no mention was made of boundaries or price in the agreement; and that Belén based her intervention on an extra-judicial document of the sale of the lands, which was attached to the complaint.

Pedro R. Gonce, the third witness, testified that one day when he was in the house of Ramón Aristides Pesante, José Adolfo Pesante appeared and told Ramón Aristides that he wanted Belén to withdraw the intervention which she had filed against the house on account of the attachment levied thereon, and to secure this end he made an offer to the effect that as soon as the sale were made he would deliver to Ramón Aristides Pesante the deed to said house and the ownership of 25 *cuerdas* of land, paying him in addition $10 a week; that Ramón Aristides told the witness to go to Mayagüez and see Rafael Mangual and ask him to prepare in the name of Belén the motion withdrawing the complaint in intervention, which Mangual did, both of them going to the house of Ramón to have Belén sign it; that the offer of José Adolfo Pesante to Ramón Aristides was made in the house of the latter, where there were a number of persons whom he cannot remember, Rafael Mangual not being among them, although the latter had been informed by the witness of what had occurred when he asked him to prepare the motion withdrawing the intervention of ownership in the name of Belén Pesante; that he cannot say whether an attorney signed this motion or whether it was some other person; that Ramón Aristides was not the husband of Belén, although he had had a number of acknowledged children by her; and that Ramón Aristides had conveyed to Belén a public deed to the entire estate, he not having had anything whatever to do with the intervention.

The fourth witness, Delfín Paz, testified that José Adolfo Pesante attached 80 *cuerdas* of land belonging to Ramón Aris-

tides Pesante, and that by reason of Belén Pesante having filed a complaint in intervention of ownership, the former proposed to the latter that he get Belén to withdraw such complaint, as the former would bid in the property and give him 25 *cuerdas* and the dwelling house, in addition to $10 a week on which to live until the lands were delivered; that when this contract was made, the contract having been verbal and no document whatsoever having been drawn, there were present in addition to the witness, Zacarias Morales, Juan Agostini, Gonce and the entire family of the house; that he knows that Ramón withdrew the complaint in intervention; that José Adolfo paid the $10 a week until he died but after his death the widow refused to make the payment; that he was not called on to witness the agreement or compromise referred to; and that Belén was in the house, though he does not recollect whether she was in the same part where the witness and the others were.

Juan Agostini, the fifth witness, testified that on an occasion when he was in the house of Ramón Aristides Pesante, José Adolfo arrived and asked Ramón to tell Belén Pesante to withdraw a document or complaint in intervention which she had filed, saying if she withdrew it he would give him the deed to 25 *cuerdas* of land and to the house in which he lived, paying him also $10 a week while the deed was being executed; that he knows that Belén withdrew the complaint in intervention, because they went to Mayagüez and then the complaint in intervention was made in favor of Ramón Pesante so that the estate which he had could be attached; that the lands were attached after the agreement between José Adolfo and Ramón, which he knows to be a fact because he went to Mayagüez with Belén when she went to make the assignment; that he does not know what a complaint in intervention is; and that he knows, because he lives in the house and is married to a daughter of Belén; that José Adolfo did not comply with anything he had offered; that he was not a witness to the contract; that no document was drawn embodying the conditions

of the contract; that José Adolfo and Ramón agreed to go to Mayagüez the day the latter should wish to do so, in order to execute the deed of sale to the 25 *cuerdas* of land and the house; that Belén was present and took part in the compromise or agreement, expressing her agreement to what José Adolfo told her with regard to executing the deed in favor of Ramón; and that the latter and Belén were not married, although he had four children by her whom he acknowledged before his death.

Zacarias Morales, the sixth and last witness, testified that on one occasion, when the attachment had been levied, he was present at a contract between Ramón Aristides Pesante and José Adolfo Pesante, Delfín Paz, Juan Agostini, Gonce and the family being also present, the contract being that as Belén was about to file a complaint in intervention, José Adolfo requested Ramón Aristides to prevent her doing so, as he was going to bid in the property, offering to give him therefor the house and 25 *cuerdas* of land, the witness withdrawing after having spoken to Agostini with whom he was in business, and that José Adolfo paid $10 a week to his uncle, Ramón Pesante.

We have set forth the testimony of the witnesses submitted in the action by the plaintiff to establish the existence of the agreement of May 24, 1901, between José Ramón Aristides and José A. Pesante, from which agreement the right claimed is derived. The proof of such agreement devolved on said party in accordance with the provisions of section 108 of the act regulating the introduction of evidence in harmony with section 1182 of the Civil Code, and the lower court in holding in its judgment that the facts and the law were against the plaintiffs, held that the evidence presented was against them also.

We are of the opinion that sections 4, 9, 13, 18 and 21 of the said act regulating the introduction of evidence have not been violated by said judgment as alleged by the appellant, because although an absolute certainty is not necessary but a moral certainty only for the evidence to be convincing,

although evidence is satisfactory which ordinarily produces moral certainty of conviction in a mind free from preoccupation, although the direct evidence of a witness worthy of full credit is proof sufficient of any act where there is no prejudice or deception, and although it is to be presumed that a witness is telling the truth, although there may be motives which destroy such presumption, the testimony of the six witnesses which constitutes the evidence presented by the plaintiff is of such a nature there is such conflict between their testimony, that they have not produced in the mind of the judge the moral certainty of the existence of the agreement on which the complaint is based, and, therefore, such evidence is not satisfactory.

The judge who sat at the trial, heard the witnesses, noticed the manner in which they testified, saw their hesitation and was present when they contradicted themselves, and we who were neither present at the trial, nor saw the witnesses, nor heard their testimony, cannot affirm that the judge erred in his finding on the evidence, when the statement of facts itself appears to reveal that his findings were not erroneous or at least that he had reason to doubt the sufficiency of the evidence presented.

If he did not reach the moral certainty of the existence of the contract the proof of which devolved on the plaintiff, he acted in accordance with the law in applying the moral and legal axiom: *Nulla est imponenda obligatio nisi de ea certo constet.*

This does not signify that a judge cannot err in his findings on the testimony of witnesses, and that the appellate court must always accept his findings as incontestable. What we require is that we be shown by the statement of facts the evident error of the judge—that is to say, that the judgment is contrary to the evidence—and as this has not occurred in this case, we must accept the findings made as a basis for the application of the law.

As the existence of the fundamental allegation of the complaint has not been proved by the testimony of the witnesses, it is unnecessary to discuss any violations of law which may have been committed in the judgment appealed from, because such violations rest on the assumption that José Ramón Aristides and José A. Pesante agreed to make the contract the execution of which it is sought to enforce and that said agreement has been established by the plaintiff.

In view of what has been stated, the judgment appealed from should be affirmed with the costs of the appeal also against the appellant.

*Affirmed.*

Justices Figueras, MacLeary and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.